IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAMUEL OGUNLEYE (#M-53194), | ) |
| Plaintiff, | ) |
| | ) Case No. 18 C 6249 |
| v. | ) |
| | ) Judge Jorge L. Alonso |
| Deputy J. BEDOLLA, et al., | ) |
| Defendants. | ) |

### MEMORANDUM OPINION AND ORDER

Plaintiff Samuel Ogunleye, a Sheridan Correctional Center inmate, filed this 42 U.S.C. § 1983 civil rights action against Cook County Jail correctional officers Bedolla, Hurtado, Prado, and Walker for failing to protect him from harm from a fellow detainee and against Cook County Jail Lieutenant Blanchard and Sergeant Crawford for objectively unreasonable conduct in the delay in medical care he received for his injuries. Currently before the Court is Defendants' motion for summary judgment (Dkt. 46). Plaintiff has responded to the motion (Dkt. 58). For the following reasons, the Court grants the motion as to Defendants Bedolla, Prado, Walker, Blanchard, and Crawford and denies the motion as to Defendant Hurtado.

### SUMMARY JUDGMENT STANDARD

**Federal Rule of Civil Procedure 56**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Jajeh v. County of Cook*, 678 F.3d 560, 566 (7th Cir. 2012). To establish that a material fact is undisputed, a party "must support the assertion by . . . citing to particular parts of materials in the

record, including depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials." Rule 56(c)(1)(A).

Once the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the allegations of his complaint and "set forth specific facts showing that there is a genuine issue for trial." *Hannemann v. Southern Door County School Dist.*, 673 F.3d 746, 751 (7th Cir. 2012). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," and "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citations omitted) (emphasis in original).

When considering a summary judgment motion, courts "construe all facts and draw all reasonable inferences in favor of the nonmoving party." *Van den Bosch v. Raemisch*, 658 F.3d 778, 785 (7th Cir. 2011). Courts may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only competent evidence, i.e., evidence that would be admissible at trial. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009).

**N.D. Ill. Local Rule 56.1**

In addition to Federal Rule of Civil Procedure 56, this Court's local rules require a party moving for summary judgment to submit a Statement of Material Facts "consist[ing] of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts

2

of the record, and other supporting materials." N.D. Ill. Local Rule 56.1(a). Under the local rules, the non-movant must respond "to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits [and other] parts of the record." Local Rule 56.1(b)(3)(A)-(B). If the non-movant seeks to present its own facts, it must submit "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment." Local Rule 56.1(b)(3)(C). The Court's local rules further state: "All material facts set forth in the statement required of the moving party [or the statement submitted by the non-moving party] will be deemed to be admitted unless controverted by the statement of the opposing party." Local Rule 56.1(b)(3)(C) and (a)(3).

In this case, Defendants submitted a Statement of Material Facts ("SOF") in accordance with Local Rule 56.1(a). (Dkt. 48.) The factual assertions therein cite to the record and are largely supported by the cited materials. (*Id.*) Plaintiff responded to Defendants' Rule 56.1 Statement (Dkt. 58), pursuant to the Rule 56.2 Notice to Pro Se Litigants sent to him by Defendants (Dkt. 49).

Defendants argue in their reply (Dkt. 59) that Plaintiff forfeited any argument countering their motion because he did not respond to the motion and memorandum filed; however, the Court construes Plaintiff's response to Defendants' Local Rule 56.1 statement, which properly cites to the record in order to establish disputed statements of fact as his response to the motion. The Court accepts the facts in Defendants' Local Rule 56.1(a)(3) statement—modified when necessary where the statement inaccurately characterizes the cited material—and Plaintiff's' factual assertions about which he could properly testify at trial, and then determines whether, on those facts, Defendants are entitled to summary judgment. With these standards in mind, the Court turns to the facts of this case.

## FACTS

Plaintiff, Samuel Ogunleye ("Ogunleye"), is a resident of Sheridan, Illinois and is currently an inmate at Sheridan Correctional Center. On January 19, 2017, and at all relevant times herein, Ogunleye was a pretrial detainee at the Cook County Department of Corrections. (Dkt. 48, Def. SOF, ¶ 1). On January 19, 2017, and at all relevant times herein, Defendant Blanchard was employed by the Sheriff of Cook County as a lieutenant at the Cook County Department of Corrections. (*Id*., at ¶ 2). On January 19, 2017, and at all relevant times herein, Defendant Crawford was employed by the Sheriff of Cook County as a sergeant at the Cook County Department of Corrections. (*Id*., at ¶ 3). On January 19, 2017, and at all relevant times herein, Defendant Walker was employed by the Sheriff of Cook County as a correctional officer at the Cook County Department of Corrections. (*Id*., at ¶ 4). On January 19, 2017, and at all relevant times herein, Defendant Prado was employed by the Sheriff of Cook County as a correctional officer at the Cook County Department of Corrections. (*Id*., at ¶ 5). On January 19, 2017, and at all relevant times herein, Defendant Bedolla was employed by the Sheriff of Cook County as a correctional officer at the Cook County Department of Corrections. (*Id*., at ¶ 6). On January 19, 2017, and at all relevant times herein, Defendant Hurtado was employed by the Sheriff of Cook County as a correctional officer at the Cook County Department of Corrections. (*Id*., at ¶ 7).

Plaintiff filed suit in this case on September 13, 2018, while he was incarcerated in the Cook County Department of Corrections. (*Id*., at ¶ 11). On January 19, 2017, Ogunleye was a detainee in Cook County Jail, residing in Division 11. (*Id*., at ¶¶ 12-13). On January 19, 2017, Plaintiff was being transported from the Cook County Criminal Court Building, back to Division 11 and was involved in a fight with fellow detainees Stephen Smith and Marcus King. (*Id*., at ¶¶ 14-16).

Correctional officers broke up the altercation. (*Id*., at ¶ 17). After the fight, Plaintiff was transported via van along with other detainees, including Stephen Smith and another pre-trial detainee Harvey Pitts, to Cermak Health Services. (*Id*., at ¶ 19 and ¶ 21). Defendant Correctional Officers Hurtado, Bedolla, and Prado transported the prisoners to Cermak. (*Id*., at ¶ 22). All detainees, including Ogunleye, Smith, and Pitts, were handcuffed the entire van ride until they arrived at Cermak Health Services. (*Id*., at ¶ 23).

During the van ride to Cermak, Plaintiff had a conversation with detainee Pitts where Pitts asked him where he was from, and when Plaintiff asked him why he wanted to know, Pitts responded by telling him "you'll figure that out when we get off the bus." (*Id*., at ¶ 24). None of Defendants Prado, Bedolla, Hurtado, or Walker witnessed or overheard this conversation between Plaintiff and Harvey Pitts. (*Id*., at ¶¶ 25-28). However, when Plaintiff exited the van, he told Officer Hurtado to watch Inmate Pitts. (*Id*., at ¶ 29). Plaintiff testified in his deposition that he told Defendant Hurtado that Pitts had initiated the conversation, that he believed he was in trouble, that Pitts was aggressive, and that Pitts was trying to intimidate him. (Dkt. 58, Pl. Resp. ¶ 29, and Dkt. 48, Def. SOF, Ex. H, pp. 41-43.) Defendant Hurtado's response to Plaintiff's concerns was "Don't worry about it. I got you. We got you." (*Id*.) No other officer was present or could hear the alleged conversation between Plaintiff and Hurtado. (*Id*., at ¶ 30).

Upon arrival at Cermak Health Services, the detainees and correctional officers stopped prior to entering the Cermak staging area to remove the detainee's handcuffs and restrain the detainees with Cermak restraints. (*Id*., at ¶ 33). While correctional officers were switching the handcuffs, detainee Pitts attacked Plaintiff and punched him in the face. (*Id*., at ¶ 34). Correctional officers immediately broke up this fight. (*Id*., at ¶ 35).

5

After correctional officers broke up the fight, officers escorted Plaintiff into the Cermak staging area where he was handcuffed and shackled to a bench per standard procedure. (*Id*., at ¶ 38). Neither Defendant Lieutenant Blanchard nor Defendant Sergeant Crawford restrained Plaintiff to the bench, nor did they order any other correctional officer to restrain Plaintiff to the bench. (*Id*., at ¶ 39).

Correctional officers at the Cook County Department of Corrections are responsible for, among other things, movement and security of pretrial detainees. (*Id*., at ¶ 40). Correctional officers are not responsible for medical treatment for pretrial detainees at Cook County Jail. (*Id*., at ¶ 41). Once a detainee is brought to Cermak Health Services by correctional officers, the medical personnel at Cermak Health Services are responsible for determining when an inmate is seen by a medical provider. (*Id*., at ¶ 42). Plaintiff waited approximately one hour in the Cermak Health Services staging area before he was seen by a medical provider. (*Id*., at ¶ 43).

## DISCUSSSION

In its order conducting an initial review of Plaintiff's amended complaint, the Court allowed him to proceed with two claims: (1) Defendants Bedolla, Hurtado, Prado and Walker acted unreasonably in failing to protect him from harm at the hands of fellow detainee Pitts, and (2) Defendants Crawford and Blanchard acted unreasonably in delaying Plaintiff's access to medical treatment for his resulting injuries. (Dkt. 11, Order of 12/17/18.) The Court will deal with each claim, in turn.

### I.     Failure to Protect.

Because Plaintiff is a pretrial detainee, his failure to protect claim arises under the substantive component of the Fourteenth Amendment's Due Process Clause. *See Fisher v. Lovejoy*,

414 F.3d 659, 661 (7th Cir. 2005). The Seventh Circuit has clarified that *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), which applied an objective reasonableness standard to a pretrial detainee's claim of excessive force by correctional officers, applies to all constitutional claims brought by pretrial detainees, including failure to protect claims. *Miranda v. Cty. of Lake*, 900 F.3d 335, 353-54 (7th Cir. 2018) (citing *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016) (applying *Kingsley* to Fourteenth Amendment failure-to-protect claims brought by pretrial detainees)).

Jail "officials have a duty to protect inmates from violent assaults by other inmates." *Rice ex rel. Rice v. Corr. Med. Serv.*, 675 F.3d 650, 669 (7th Cir. 2012). "They incur liability for the breach of that duty when they were aware of a substantial risk of serious injury to an inmate but nevertheless failed to take appropriate steps to protect him from a known danger." *Id.* (internal quotation marks omitted).

To establish a Fourteenth Amendment claim against a correctional officer under this standard, Plaintiff must allege facts suggesting that: (1) "[t]he defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;" (2) "[t]hose conditions put the plaintiff at substantial risk of suffering serious harm;" (3) the defendant's conduct was objectively unreasonable (*i.e.*, the officer "did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious"); and (4) [b]y not taking such measures, the defendant caused the plaintiff's injuries." *Castro*, 833 F.3d at 1071.

7

A constitutional violation, however, does not occur "every time an inmate gets attacked by another inmate." *Dale v. Poston,* 548 F.3d 563, 569 (7th Cir. 2008). Correctional facilities, "after all, are dangerous places often full of people who have demonstrated aggression." *Id.* Thus, "negligence" by correctional officials "is not enough." *Smith v. Sangamon Cty. Sheriff's Dep't*, 715 F.3d 188, 191 (7th Cir. 2014) (citations omitted); *see also Miranda*, 900 F.3d at 353 ("[I]t will not be enough to show negligence or gross negligence.") (citations omitted).

The record establishes that Plaintiff was involved in two altercations with fellow detainees on January 19, 2017. With regard to the first one, no Defendant had prior knowledge of the first incident, the fight was broken up right away, and Plaintiff suffered no injury due to the altercation. Thus, there is no evidence supporting failure to protect as to the first incident.

As to the second incident occurring on January 19, 2017, the record establishes that none of Defendants Bedolla, Prado, and Walker were aware that Plaintiff was in fear for his safety. They did not hear the conversation with detainee Pitts on the transport van and had no prior information about a possible problem between Plaintiff and Pitts. However, Plaintiff had a conversation with Defendant Hurtado in which he expressed concern regarding detainee Pitts being aggressive, intimidating, and that he believed he was in trouble. Accordingly, Defendant Hurtado was on notice that Plaintiff was concerned about his physical safety, and Plaintiff was involved in an altercation with Pitts immediately after.

The record is then silent as to what, if anything, Defendant Hurtado did to protect Plaintiff, in light of his fear. Based on the evidence in the record, the Court finds that questions of fact remain as to whether Defendant Hurtado's conduct was objectively reasonable. Objective reasonableness "is a legal determination rather than a pure question of fact for the jury to decide." *Dockery v.*

*Blackburn*, 911 F.3d 458, 464 (7th Cir. 2018); *see Bell v. Irwin*, 321 F.3d 637, 640 (7th Cir. 2003) (collecting cases). Consequently, on Plaintiff's failure to protect claim, the Court grants summary judgment as to Defendants Bedolla, Walker, and Prado, but denies summary judgment as to Defendant Hurtado.

## II.     Qualified Immunity

In light of the fact that the Court has denied summary judgment to Defendant Hurtado based on the fact that the record is silent as to what, if anything, he did in response to Plaintiff's concerns for his safety after his conversation with detainee Pitts, the Court must address Defendant's argument that he is entitled to qualified immunity. "Qualified immunity shields government officials from liability under Section 1983 'for actions taken while performing discretionary functions, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gruenberg v. Gempeler*, 697 F.3d 573, 578 (7th Cir. 2012) (citation omitted). Courts must "consider whether the alleged facts demonstrate a constitutional violation, and whether the constitutional right was clearly established." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Gruenberg*, 697 F.3d at 578 (quoting *Estate of Escobedo v. Bender*, 600 F.3d 770, 779 (7th Cir. 2010)).

Defendants argue that they had no reason to know that Plaintiff was in fear for his safety. However, their argument minimizes and somewhat misconstrues the conversation between Plaintiff and Defendant Hurtado. Defendants contend that Plaintiff merely told Defendant Hurtado to "watch him," referring to Pitts, but the record, viewed from Plaintiff's point of view, establishes

9

that Plaintiff also told Hurtado that Pitts was aggressive and that he felt intimidated. The law was clear at the time that if an officer was on notice of a substantial risk of serious harm and failed to take appropriate steps to protect the inmate then his actions (or inactions) violated the constitution. *Rice ex rel. Rice*, 675 F.3d at 669. As stated above, the record provided by Defendants is silent as to what, if anything, Defendant Hurtado did in response to the threat reported by Plaintiff. Because the law was clear at the time and the record is incomplete, the Court cannot find that Defendant Hurtado is entitled to qualified immunity.

### III.  Delay in Medical Care

Plaintiff was also allowed to proceed on a claim that Defendants Blanchard and Crawford unreasonably delayed his access to medical care after the altercation with detainee Pitts. To establish that medical care violates the Fourteenth Amendment, a detainee must show that (1) he suffered from an objectively serious medical condition, *see Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005), and (2) jail personnel "purposefully, knowingly, or perhaps even recklessly" disregarded a serious risk to his health or safety when treating the condition. *Miranda*, 900 F.3d 335 at 353-542. Negligence or even gross negligence is not enough. *Id*. Instead, a defendant's conduct must be objectively unreasonable, which means that the conduct must be "more than negligence . . . something akin to reckless disregard[.]" *Id*.

Defendants do not address the question of whether Plaintiff suffered from an objectively serious medical condition, but the record establishes that Plaintiff suffered a broken jaw due to the altercation with detainee Pitts. (Dkt. 48, Ex. H, p. 67.) Thus, the record establishes that Plaintiff suffered from an objectively serious medical condition. *See Conley v. Birch*, 796 F.3d 742, 747 (7th Cir. 2015) (describing potentially fractured hand as an "objectively serious medical condition")

10

(citation and quotation marks omitted); *Pyles*, 771 F.3d at 409. An untrained person also likely would have known that delaying treatment for a disfigured and potentially fractured jaw could lead to severe pain or medical complications. *See McGowan v. Hulick*, 612 F.3d 636, 640-41 (7th Cir. 2010) (citations omitted); *Grieveson v. Anderson*, 538 F.3d 763, 778-80 (7th Cir. 2008).

However, the record establishes, and Plaintiff admits, that immediately after the fight he was taken to the staging area where he was handcuffed and shackled to a bench to await treatment. Neither Crawford, nor Blanchard were involved in handcuffing him to the bench. He waited an hour to be treated by medical personnel. Once at Cermak, medical personnel are responsible for determining when an inmate is seen by medical personnel. Section 1983 creates a cause of action based on personal liability and predicated on fault, so, to be held liable, an individual must have caused or participated in a constitutional deprivation. *Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012); *Pepper v. Vill. of Oak Park,* 430 F.3d 809, 810 (7th Cir. 2005). Both Defendants Crawford and Blanchard are correctional personnel, and the record establishes that they escorted Plaintiff to Cermak after the altercation. They did not handcuff him to the bench and they had no involvement in when he saw medical personnel. As such, there is no question of fact that they were not involved in any delay in treatment suffered by Plaintiff.

Additionally, even if there were evidence that Crawford and Blanchard were involved in the one-hour delay in treatment, under the facts of the case and prevailing case law, Defendants would be entitled to summary judgment. *See Langston v. Peters,* 100 F.3d 1235, 1240 (7th Cir. 1996); *Baldwin v. Dart*, No. 15 C 2478, 2015 WL 1639604, at *2 (N.D. Ill. Apr. 10, 2015) (dismissing inmate's claim regarding waiting from afternoon to following morning for treatment for injured back, observing that, "[i]ndeed, the common experience of humankind who have had occasion to

11

call on hospital resources these days might well support the taking of judicial notice that if Baldwin had been free to seek care from a private medical provider he might very well have waited a similar amount of time or longer for appropriate medical attention, or at the emergency room, than Baldwin experienced at the County Jail and Cermak"). A one-hour wait is not unreasonable for treatment for a broken jaw, and Plaintiff cannot meet the standard established under *Miranda* to establish a violation of his right to objectively reasonable medical care. Thus, the Court grants Defendants Crawford and Blanchard summary judgment on Plaintiff's claim of objectively unreasonable medical care for broken jaw.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment [46] is granted in part and denied in part. The motion is granted as to Defendants Bedolla, Prado, Walker, Blanchard, and Crawford, and they are dismissed as Defendants. It is denied as to Defendant Hurtado. The Court will set a status hearing in a separate order.

**SO ORDERED.**  ENTERED:  September 24, 2020

_____
**JORGE L. ALONSO**
**United States District Judge**